UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

C.A. NO. 08-17780

| | |
|---|---|
| NATIONAL CAREER COLLEGE, INC.; )<br>DBA Hawaii Business College )<br>ALLEN MIRZAEI; RAMIN MIRZAEI; )<br>NEIMA MIRZAEI, )<br>  )<br>    Plaintiffs - Appellants, )<br>  )<br>          vs. )<br>  )<br>MARGARET SPELLINGS, Secretary, )<br>United States Department of )<br>Education, in her official )<br>capacity, )<br>  )<br>    Defendant - Appellee. )<br>_____ ) | D.C. NO. CV07-00075 HG LEK<br>(District of Hawaii) |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

ANSWERING BRIEF OF DEFENDANT-APPELLEE
MARGARET SPELLINGS, SECRETARY, UNITED STATES
DEPARTMENT OF EDUCATION, IN HER OFFICIAL CAPACITY

EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

THOMAS A. HELPER 5676
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: tom.helper@usdoj.gov

Attorneys for Defendant-Appellee
MARGARET SPELLINGS, Secretary,
United States Department of
Education, in her official capacity

TABLE OF CONTENTS

PAGE

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.   Standard of Review . . . . . . . . . . . . . . . . 14

    II.  The Department Was Authorized To Deny
        HBC's Title IV Reapplication Based On
        The Same Misconduct For Which It Previously
        Brought And Resolved A Debarment Proceeding
        Against Its 100% Owner . . . . . . . . . . . . . 15

    III. The Department's Denial Of HBC's Title IV
        Reapplication Was Not Arbitrary or Capricious . . . 22

    IV.  The Department's Denial Of HBC's Title IV
        Reapplication With Mr. Mirzaei AS 100% Owner
        Was Not Arbitrary And Capricious Following
        The Department's Acknowledgment Of HBC's Report
        That Mr. Mirzaei Had Become A 49% Owner . . . . . 28

    V.   The Deparment Provided HBC With All The
        Process HBC Was Due Pursuant To The Denial
        of HBC's Title IV Eligibility Reapplication . . . . 31

    VI.  The Department's Denial Of HBC's Title IV
        Reapplication Did Not Constitute A De Facto
        Debarment Of Allen Mirzaei . . . . . . . . . . . 37

    VII. Even Assuming Plaintiffs Somehow Prevailed On
        Liability, They Would Not Be Entitled to
        Anything Other Than A Debarment Proceeding . . . . 51

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 53

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

<u>**PAGE(s)**</u>

*Abyss Oil Co., Inc. v. United States*,
1993 U.S. Dist. LEXIS 15499 (D.D.C.  Oct. 29, 1993)  . .  44

*Armstrong v. Accrediting Council for Continuing
Educ. & Training, Inc.*,
832 F.Supp. 419 (D.D.C. 1993) . . . . . . . . . . . . . 53

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) . . . . . . . . . . . . . . 32

*Bd of Regents v. Roth*,
408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . 31

*Career College Ass'n v. Riley*,
74 F.3d 1265 (D.C. Cir. 1996) . . . . . . . . . . . . 33

*Ctr. for Biological Diversity v. Nat'l Highway
Traffic Safety Admin.*,
508 F.3d 508 (9th Cir. 2007) . . . . . . . . . . . . . 14

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . 14

*Commercial Envelope Mfg. Co. v. Dunlop*,
1975 U.S. Dist. LEXIS 11695 (S.D.N.Y. June 26, 1975) . .  43

*Cmty. Econ. Dev. Corp., Inc. v. United States*,
577 F.Supp. 425 (D.D.C. 1983) . . . . . . . . . . . . 44

*Gilbert v. Homar*,
520 U.S. 924 (1997) . . . . . . . . . . . . . . . . . 31

*Gonzalez v. Freeman*,
334 F.2d 570 (D.C. Cir. 1964) . . . . . . . . . . . 36, 41

*Hormel v. Helvering*,
    312 U.S. 552 (U.S. 1941) . . . . . . . . . . . . . . . . 51

*Instituto de Educacion Universal Corp. v. Riley*,
    973 F.Supp. 95 (D.P.R. 1997) . . . . . . . . . . . . . . 27

*J.C. Driskill, Inc. v. Abdnor*,
    901 F.2d 383 (4th Cir. 1990) . . . . . . . . . . . . . 53

*Leslie and Elliott Co., Inc. v. Garrett*,
    732 F.Supp. 191 (D.D.C. 1990) . . . . . . . . . . . . 52

*Love v. Pepersack*,
    47 F.3d 120 (4th Cir. 1995) . . . . . . . . . . . . . 33

*Mission Group Kansas, Inc. v. Riley*,
    146 F.3d 775 (10th Cir. 1998) . . . . . . . . . . . . 33

*N.W. Resource Information Center v.*
    *N.W. Power Planning* Council, 35 F.3d 1371 (9th Cir. 1994) 14

*New Concept Beauty Academy, Inc. v. United States*
    *Dep't of Educ.*,
    1998 U.S. Dist. LEXIS 17373 (E.D.Pa. Oct. 29, 1998) . . 26

*New York Inst. of Dietetics, Inc. v. Riley*,
    966 F.Supp. 1300 (S.D.N.Y. 1997) . . . . . . . . . . . 20

*Old Dominion Dairy Products, Inc. v. Sec'y of Defense*,
    631 F.2d 953 (D.C. Cir. 1980) . . . . . . . . . . 34, 35

*Parks Sch. of Business, Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . 38

*Related Indus., Inc. v. United States*,
    2 Cl. Ct 517, 529 (Cl. Ct. 1983) . . . . . . . . . . . 52

*Rivero v. City and County of San Francisco*,
    316 F.3d 857 (9th Cir. 2002) . . . . . . . . . . . . . 41

*TLT Const. Corp. v. United States*,
    50 Fed. Cl. 212 (Fed. Cl. 2001) . . . . . . . . . . . 43

*Thomas v. Bennett*,
    856 F.2d 1165 (8th Cir. 1998) . . . . . . . . . . . . 53

iii

*Village Pond Inc. v. Town of Darien*,
  56 F.3d 375 (2d Cir. 1995),
  cert. denied, 519 U.S. 808 (1996) . . . . . . . . . . . 32

*Wilson v. Dep't of Agric.*,
  991 F.2d 1211 (5th Cir. 1993) . . . . . . . . . . . . . 14

### FEDERAL STATUTES

5 U.S.C. § 701 et seq . . . . . . . . . . . . . . . . . 4, 14

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 791 et seq . . . . . . . . . . . . . . . . . . 1

20 U.S.C. § 1002(b)(1)(D) . . . . . . . . . . . . . 8, 51

20 U.S.C. § 1070 et seq. . . . . . . . . . . . . . . . . 5

20 U.S.C. § 1070a et seq. . . . . . . . . . . . . . . . . 6

20 U.S.C. § 1071 et seq. . . . . . . . . . . . . . . . . 6

20 U.S.C. § 1078 . . . . . . . . . . . . . . . . . . . . 6

20 U.S.C. § 1082(a)(2) . . . . . . . . . . . . . . . . . 53

20 U.S.C. § 1087(c)(1) . . . . . . . . . . . . . . . . . 52

20 U.S.C. § 1087-1 . . . . . . . . . . . . . . . . . . . 6

20 U.S.C. § 1094(a) . . . . . . . . . . . . . . . . . . 24

20 U.S.C. § 1094(c)(1)(A)(i) . . . . . . . . . . . . . . 16

20 U.S.C. § 1099(c)(i) . . . . . . . . . . . . . . . . . 33

20 U.S.C. § 1099c(i)(1) . . . . . . . . . . . . . . 8, 22, 29

20 U.S.C. § 1099c(1) . . . . . . . . . . . . . . . . . . 29

34 C.F.R. § 600.20 . . . . . . . . . . . . . . . . . . . 6

34 C.F.R. § 600.20(a) . . . . . . . . . . . . . . . . . . . . 25

34 C.F.R. § 600.21(a)(6) . . . . . . . . . . . . . . . 7, 29

34 C.F.R. § 600.31 . . . . . . . . . . . . . . . . 23, 24

34 C.F.R. § 600.41(c)(1) . . . . . . . . . . . . . . . 40

34 C.F.R. § 668.13 . . . . . . . . . . . . . . . . 6, 24

34 C.F.R. § 668.13(c)(1)(ii) . . . . . . . . . . . . . 18

34 C.F.R. § 668.14 . . . . . . . . . . . . . . . . . . 7

34 C.F.R. § 668.15 . . . . . . . . . . . . . . . . . . 25

34 C.F.R. § 668.16 . . . . . . . . . . . . . . . . . . 25

34 C.F.R. § 668.16(n) . . . . . . . . . . . . . 16, 25, 39

34 C.F.R. § 668.23(a)(2) . . . . . . . . . . . . . . . 16

34 C.F.R. § 668.82(a) . . . . . . . . . . . . . . 6, 16, 25

34 C.F.R. § 668.82(b) . . . . . . . . . . . . . . 6, 16, 25

34 C.F.R. § 690.1 . . . . . . . . . . . . . . . . . . . 6

34 C.F.R. § 85.115 . . . . . . . . . . . . . . . . . . 49

34 C.F.R. § 85.125 . . . . . . . . . . . . . . . . . . 49

34 C.F.R. § 85.140 . . . . . . . . . . . . . . . . . . 18

34 C.F.R. § 85.200 . . . . . . . . . . . . . . . . . . 49

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . 1

59 Fed. Reg. 6453 (Feb. 10, 1994) . . . . . . . . . . . 24

1992 U.S.C.C.A.N. 334, 335 . . . . . . . . . . . . . . 23

## STATEMENT OF JURISDICTION

Appellants National Career College, Inc., doing business as Hawaii Business College (HBC), Allen Mirzaei, and his sons, Neima Mirzaei and Ramin Mirzaei brought this action against the United States Department of Education ("the Department") under the Administrative Procedure Act, 5 U.S.C. §§ 791 et seq. The District Court had jurisdiction over the matter pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Was the Department barred from considering the submission of false financial statements by a Title IV eligible institution owned by Mr. Allen Mirzaei, when the Department evaluated HBC's reapplication to serve as the Department's fiduciary, because of the existence of a settlement agreement resolving a previous debarment proceeding brought against Mr. Mirzaei as a result of that submission?

2.  Was the Department's decision that Mr. Mirzaei could not be trusted to act as the Department's fiduciary arbitrary or capricious, where he failed to offer any reasonable explanation for his submission of false financial statements?

3.  Was the Department's denial of HBC's Title IV eligibility reapplication with Mr. Mirzaei as 100% owner an arbitrary and capricious action, given the Department's prior

1

receipt of information that Mr. Mirzaei had previously acquired a 49% ownership interest, where the Department was not required to approve or disapprove that acquisition?

4.    Did the Department's denial of HBC's Title IV eligibility reapplication with Mr. Mirzaei as 100% owner, following notice and an opportunity to respond to the Department's decision that Mr. Mirzaei could not be trusted as a fiduciary due to his failure to adequately explain the submission of false financial statements by a previous institution that he owned, violate due process requirements of the Fifth Amendment to the United States Constitution?

5.    Did the Department's one-time denial of HBC's reapplication for Title IV eligibility with Mr. Allen Mirzaei as 100% owner, based on the fact that an institution owned by Mirzaei had previously submitted false financial statements, establish that Mr. Mirzaei has been de facto debarred from contracting with the government?

6.    Should this Court entertain Appellants' request for partial reinstatement of its Title IV eligibility, where the claim was not presented to the District Court, and is contrary to the sole remedy available in de facto debarment cases?

## STATEMENT OF THE CASE

On February 13, 2007, Appellants sought preliminary relief by filing a Complaint, a Motion for Temporary Restraining Order,

2

and a Motion for Preliminary Injunction in the United States District Court for the District of Hawaii. Court Record (CR) 1. Appellants asked the District Court to reverse the Department's decision to deny Title IV eligibility to HBC, and to compel the Department to provide debarment hearings to the individual Appellants. On February 16, 2007, the District Court denied the Motion for a Temporary Restraining Order, and set the preliminary injunction hearing for March 19, 2007, with an accelerated briefing schedule. CR 15.

On March 5, 2007, Appellants filed an Amended Complaint for Declaratory and Injunctive Relief. CR 16. After briefing by both parties and oral argument, on March 19, 2007 the District Court denied the Preliminary Injunction motion, with a written order explaining the decision on April 13, 2007. CR 30, 33; Supplemental Excerpts of Record (SER) at 019-044.

On September 25, 2007, Appellants filed a Second Amended Complaint for Declaratory Relief and Violation of Due Process. CR 98. Following discovery, on March 6, 2008, the Department moved for summary judgment, with the accompanying Concise Statement of Material Fact required by the District of Hawaii Local Rules. CR 120, 121. On April 4, 2008, Appellants filed their own motion for summary judgment and Concise Statement. CR 131. Both parties essentially agreed that summary disposition was appropriate because there were no disputed facts and because

3

the case generally consisted of a record review of a final agency action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, as supplemented by the limited discovery authorized by the Court.[1]  The parties filed memoranda in opposition to each other's motions on April 16 and 17, 2008, CR 140, 141, and Reply Memoranda in support of their own motions on April 24 and 29, 2008.  CR 146, 147.

After oral argument on May 5, 2008, CR 149, on September 26, 2008, the District Court upheld the Department's authority to deny HBC's reapplication for Title IV funding by granting the Department's motion for summary judgment, and denying Appellants' cross-motion for summary judgment.  CR 167, SER at 001-018.  The District Court found that, in rejecting HBC's reapplication to participate in Title IV, the Department properly considered the fact that Mr. Mirzaei had submitted false financial statements when he owned another Title IV institution.  The District Court rejected Appellant's argument that an agreement settling the charges arising from the false submission barred the Department from considering the submission:  "The Settlement Agreement neither directly addressed nor prohibited the [Department] from considering Mirzaei's prior conduct in future applications for Title IV federal funding."  SER at 001, 012.  The District Court

---

[1]  The complete certified administrative record is found at SER 083-202.

4

also upheld the Department's rejection of HBC's application as rational under the Administrative Procedure Act. Finally, the District Court rejected Appellant's assertion that the Department's denial of HBC's reapplication constituted a *de facto* debarment of Mr. Mirzaei from all federal contracts: "The Department of Education's denial of one application by Hawaii Business College for Title IV federal funds does not constitute a 'systematic pattern of debarment.' Plaintiffs are not prohibited from submitting future applications to the DOE for federal funding." SER at 016.

The District Court entered judgment for defendant on October 6, 2008. CR 168. Appellants fled a timely Notice of Appeal on December 4, 2008. CR 169.

## STATEMENT OF THE FACTS

The facts in this case are essentially undisputed. Because both parties filed for summary judgment in the case below, as a matter of law, they are in agreement that none of the salient facts that govern this matter are in dispute. The key facts are as follows.

Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.*, (HEA) establishes the student financial assistance programs in which students may participate in their pursuit of postsecondary education if they attend a Title IV eligible institution. The Title IV programs include the Federal

5

Pell Grant program, 20 U.S.C. §§ 1070a *et seq.*, a program
designed to "award grants to help financially needy students meet
the cost of their postsecondary education," 34 C.F.R. § 690.1.
They also include the Federal Family Education Loan (FFEL)
program, 20 U.S.C. §§ 1071 et seq., a loan program through which
lenders use their own funds to make loans to qualified borrowers
to facilitate attendance at eligible postsecondary institutions.
These loans are guaranteed by State agencies or non-profit
organizations and are subsidized, and often reinsured, by the
Department.  20 U.S.C. §§ 1078, 1087-1.

    In order to participate in the student financial assistance
programs authorized by Title IV, an institution must apply to the
Department for a determination of eligibility.  Pursuant to this
application process, the Department renders a decision only after
performing a through review of the applicant's administrative
capability and financial responsibility, determining the
institution's satisfaction of statutory eligibility requirements,
and rendering a decision whether the institution appears capable
of acting as the Department's fiduciary in the administration of
Title IV funds. *See* 34 C.F.R. §§ 600.20, 668.82(a), (b).  Some
Title IV applications are approved, some are disapproved, and
some are provisionally approved.  See 34 C.F.R. § 668.13.  If an
application is approved, an institution must execute a contract
with the Department known as a program participation agreement

6

(PPA) that governs the terms of the institution's receipt and disbursement of Title IV funds. 34 C.F.R. § 668.14.

HBC was a Title IV eligible institution from 1976 until August 2006. SER at 074. In 2004, HBC changed ownership, and remained Title IV eligible under that new ownership. SER at 074, 081.

On March 7, 2006, the Department received notice from HBC that Mr. Allen Mirzaei had become a 49% owner of the institution. SER at 045. This information was provided to the Department to report a change of ownership and showed that majority (51%) control was still held by another individual. *Id*. Because Mr. Mirzaei was a minority owner, there was no change in ownership that resulted in a change in control at the institution, and no Department approval was required for this transaction. *See* SER at 064, 071-072. As such, the institution merely provided this information to the Department to satisfy certain reporting requirements placed upon institutions to keep their status current. *See* 34 C.F.R. § 600.21(a)(6). The Department subsequently acknowledged receipt of this information by updating HBC's Eligibility and Certification Report (ECAR) on June 7, 2006. *See* SER at 074.

On August 1, 2006, Mr. Mirzaei acquired the remaining 51% ownership interest in HBC to become the sole shareholder in this for-profit enterprise. *See* SER at 085-099. This constituted a

7

change in ownership that resulted in a change in control, and as a result, HBC's PPA-- the agreement through which HBC received Title IV eligibility-- expired, and HBC had to reapply for Title IV eligibility with its new ownership. 20 U.S.C. § 1099c(i)(1). This also represented the first time that Mr. Mirzaei sought approval to hold a controlling interest in an institution with Title IV eligibility since a settlement agreement between the Department and Mr. Mirzaei which limited his ownership interest to no more than five percent had expired. *See* SER at 191, 192.

HBC submitted a Title IV reapplication reflecting its change of ownership that resulted in a change in its control on August 8, 2006. SER at 085. Since that time, HBC has been ineligible to receive Title IV funds because of the expiration of its previously-existing PPA, and following notice from the Department received on August 24, 2006, students attending HBC had no further access to Title IV aid. SER at 203. On August 8, 2007, HBC lost its accreditation, *see* SER at 221-227, a statutorily mandated element of Title IV eligibility. 20 U.S.C. § 1002(b)(1)(D).

Prior to its submission of a change of ownership application resulting in a change of control, HBC did not request a preacquisition review from the Department to receive information regarding any potential problems that might exist to approval of that application. SER at 064-071. If such a request had been

8

made, the Department would have provided HBC with any concerns it had relevant to the approval of its Title IV application with Mr. Mirzaei as 100% owner.  See id. at 070.[2]

On October 10, 2006, the Department denied HBC's Title IV reapplication based upon its prior experience with Mr. Mirzaei. SER at 182.  Of particular concern to the Department was the fact that, in 1997, Computer Business College (CBC), Mr. Mirzaei's former institution, submitted required audited financial statements to the Department under a letter signed by Mr. Mirzaei.  SER at 182-183, 104-174.  The financial statements, however, were unsigned.  *See* SER at 104, 170.  As a result, Department personnel contacted Mr. Mirzaei and advised him that the financial statements would be rejected absent the auditor's signature.  SER at 104, 105.  CBC then resubmitted the financial statements with what were purported to be the auditor's signatures.  SER at 132-169; *see especially*, at 132, 145, and 158.  When the Department subsequently contacted the auditor to question certain aspects of the accompanying audits, the auditor

---

[2]  Without citing any authority for the claim—because there is none—in their opening brief, Appellants claimed that Mr. Mirzaei did not avail himself of the Department's preacquisition review process because the Department had received HBC's notice of Mr. Mirzaei's 49% ownership interest "just months earlier and he did not expect any problems."  Appellants' Opening Brief at 10, n.11.  While the Department does not know precisely why Mr. Mirzaei ignored this process, it seems more likely that he had hoped to avoid bringing additional attention to himself by highlighting his 100% ownership through seeking the Department's preacquisition opinion.

informed the Department that he had not performed *any* of the audit work to which his signature had since been attached, and that the signature on the financial statements was not his. SER at 170-171. As a result, the Department concluded that the signatures were forged, as the auditor would presumably have no reason to deny the authenticity of his own signature if he had performed the work, been paid for his services, completed the financial statements, and then signed them after initially "forgetting" to do so.

Without admitting any personal involvement in the forgeries, in 1999, Mr. Mirzaei agreed to be voluntarily excluded from the Department's programs for three years to settle a proposed debarment action that the Department brought against him. SER at 211.

With HBC's Title IV reapplication in 2006, Mr. Mirzaei failed to produce any evidence showing a transformation of his character, or any evidence explaining the circumstances surrounding the submission of forged documents in the CBC matter, or any other evidence in extenuation and mitigation. Accordingly, on October 10, 2006, the Department denied HBC's Title IV eligibility reapplication. SER at 064, 072, and 182-183.

Subsequent to HBC's receipt of this denial, HBC's then-counsel contacted the Department in an effort to discuss

10

reinstatement of the school's Title IV eligibility while a
possible settlement of the denial was proposed.  SER at 064, 072,
and 204-210.  In response to this suggestion, and as part of
settlement discussions, on October 25, 2006, a representative
from the Department's Office of General Counsel stated that the
Department would not agree to interim Title IV funding for the
school while it operated under a "management agreement," and that
"[t]he Department will review any application for the school
under a different ownership structure, but is unlikely to approve
any arrangement where Mr. Mirzaei has an ownership interest that
is greater than 25 percent."  SER at 219.  HBC's counsel was
further advised that any subsequent approval of a change of
ownership for HBC would likely include limits on the ownership
percentage that could be held by Mr. Mirzaei, or his family.  *Id*.
No such materially complete application was ever received,
however, and the Department rendered no formal decision in this
regard.  SER at 064, 072.

On October 30, 2006, after having received notice of the
application denial, and an opportunity to submit written
materials in response, HBC requested that the Department
reconsider its denial of HBC's Title IV eligibility application
with Mr. Mirzaei as 100% owner.  SER at 204-210.  HBC presented
no evidence or argument to contest the reason for the denial -
the submission of false financial statements.  *See id.*  Following

11

a review of HBC's response, on November 9, 2006, the Department sent a letter to HBC denying HBC's request for reconsideration for the reasons stated therein.  SER at 200-202.

## SUMMARY OF ARGUMENT

In evaluating HBC's Title IV reapplication, the Department properly considered the submission of false financial statements by an institution where Mr. Mirzaei was the 100% owner.  The fact that the Department previously initiated and settled a debarment action against Mr. Mirzaei for the same misconduct in no way forbade the Department from considering whether another institution with Mr. Mirzaei as 100% owner was capable of acting as the Department's fiduciary absent evidence of a change in Mr. Mirzaei's character or the presentment and consideration of other matters in extenuation and mitigation.  The denial was neither arbitrary nor capricious, and the District Court properly upheld it under the Administrative Procedure Act.

The Department's denial of HBC's reapplication with Mr. Mirzaei as 100% owner was also not arbitrary and capricious simply because the Department had previously received information that Mr. Mirzaei had obtained a 49% ownership interest in HBC, an event that did not trigger a loss of Title IV eligibility and the need to submit a Title IV reapplication.  Rather, the Department's decision to deny HBC's reapplication was rational.

The district court also properly found that the Department's denial complied with due process. Although the Department believes that the District Court erred in finding that Appellants had any protected property interest in being granted the fiduciary status required for Title IV eligibility, the District Court was certainly correct in finding that Appellants received all the process due in the circumstances. Following HBC's statutory loss of Title IV eligibility when it changed ownership resulting in a change in control, the Department's denial of HBC's reapplication for Title IV eligibility provided HBC with proper notice of the bases for the denial, and an opportunity to submit evidence and argument in opposition.

Through its denial of HBC's reapplication for Title IV eligibility, the Department has not de facto debarred Mr. Mirzaei. The Department rejected a single application by an institution with Mr. Mirzaei as its 100% owner, after previously acknowledging Mr. Mirzaei's status as a minority owner. This behavior does not establish how the Department would act in any other case if an institution submitted an application with Mr. Mirzaei as a minority owner of any amount, or even a majority owner, assuming that in response to a preacquisition review, or a review of the application, the institution were to explain the nature of Mr. Mirzaei's past conduct, or establish his changed character for trustworthiness. The same analysis extends to any

13

consideration of any institution that may have Mr. Mirzaei's sons within its ownership structure.

Finally, even assuming that Appellants somehow prevail on liability, they would not be entitled to the partial reinstatement of HBC's Title IV eligibility, a request for relief they raise for the first time on appeal; they would be entitled only to debarment proceedings.

### ARGUMENT

## I.   Standard of Review

This matter was brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.  A court reviews an agency determination to ascertain whether the final agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Center for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 508 F. 3d 508, 526 (9th Cir. 2007).  This arbitrary and capricious standard is highly deferential to the agency's determination.  *See N.W. Resource Info. Center v. N.W. Power Planning Council*, 35 F. 3d 1371, 1383 (9th Cir. 1994)("Review under this standard is to be 'searching and careful,' but remains 'narrow,' and a court is not to substitute its judgment for that of the agency.")  *See also Wilson v. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993)("A decision is arbitrary or capricious

only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. … The agency decision need only have a rational basis and it does not have to be a decision the court would have made.")  Finally, "[t]he Secretary's decision is entitled to a presumption of regularity," and "[t]he court is not empowered to substitute its judgment for that of the agency."  Citizens to Preserve Overton Park, Inc., supra at 415, 416.  As demonstrated below, the Department's determination in this case was rational, and is entitled to appropriate deference.

**II.  The Department Was Authorized To Deny HBC's Title IV Reapplication Based On The Same Misconduct For Which It Previously Brought And Resolved A Debarment Proceeding Against Its 100% Owner**

Appellants argue that the Department abused its discretion by taking into account the undisputed fact that Mr. Mirzaei submitted false financial statements when he owned another Title IV institution.  The District Court properly rejected this argument, finding not only that the Department was authorized to consider that fact, but that it "had a responsibility" to do so. SER at 001, 012.

The Department evaluates every Title IV eligibility application it receives to determine whether an institution satisfies the Department's standards of administrative capability and financial responsibility.  SER at 064, 067.  Pursuant to this

15

review, the Department considers whether an institution has demonstrated a degree of trustworthiness sufficient to serve as its fiduciary, 34 C.F.R. §§ 668.82(a), (b), and whether it "otherwise appear(s) to lack the ability to administer the Title IV, HEA programs competently." 34 C.F.R. § 668.16(n). There is nothing in Title IV, or its implementing regulations, that circumscribe what facts the Department may consider in reaching a decision on an eligibility application, assuming, of course, its decision is "rational." Here, the Department considered the fact that Mr. Mirzaei, the owner of HBC, had previously provided forged financial statements to the Department when he was the owner of another Title IV institution, and concluded that HBC under his sole control could not be trusted to act either competently, or as its fiduciary. As the District Court concluded, "[t]he [Department] had a responsibility to consider Mirzaei's past behavior as an owner of an educational institution in connection with the reapplication for Title IV federal funds after Mirzaei took control of HBC." SER at 001, 012.

The HEA and its implanting regulations require institutions to submit annual audited financial statements and compliance audits, 20 U.S.C. § 1094(c)(1)(A)(i), 34 C.F.R. § 668.23(a)(2), and these submissions play a crucial role in the Department's ongoing evaluation of an institution's financial strength and administrative capability. Fraud in the creation, or submission,

16

of these documents constitutes a core breach of an institution's reporting requirements.

Previously, the Department initiated an action to debar Mr. Mirzaei based on his submission of forged financial statements when he was another institution's sole owner and president. SER at 104-106, 211. The parties settled that matter with Mr. Mirzaei agreeing to be voluntarily excluded from the Department's programs with the ability to retain no more than a five percent ownership interest in any Title IV eligible institution. SER at 211. Subsequently, the voluntary exclusion lapsed, and Mr. Mirzaei became a 49% owner of HBC, a status he could not have enjoyed under the settlement agreement.

Appellants state that they "do not disagree with the district court's statement that … [the Department] had and has the duty under 34 C.F.R. § 668.82(a) to evaluate [the] integrity of [Mr.] Mirzaei, as it would any proposed new controlling owner." Appellants' Opening Brief at 22. Appellants go on to note correctly that the District Court further found that Mr. Mirzaei's three-year exclusion "did not expunge the underlying cause for Mirzaei's debarment, and consideration of Mirzaei's conduct is not otherwise prohibited by statute or regulation." Id. Appellants, however, conclude that this finding is erroneous because the Department cannot extend the terms of a debarment absent the commission of some new act. *Id*. The rather

17

transparent flaw in this argument is that it presupposes that the Department has extended Mr. Mirzaei's debarment, when it has done no such thing. As discussed at length below, Mr. Mirzaei is not debarred; his name does not appear on the Excluded Parties List that reflects a debarred status, nor is he limited in his abilities to contract with any other federal agency. 34 C.F.R. § 85.140. Moreover, when the settlement agreement lapsed, Mr. Mirzaei was no longer limited to a five percent ownership interest in a Title IV eligible institution. However, the expiration of the settlement agreement did not suddenly entitle him as a matter of law to be a 100% owner of a Title IV eligible institution.

The Department addressed the manner in which the settlement agreement affected its determination, and explained its rationale for denying HBC's request to reconsider its application denial in a letter to Mr. Mirzaei:

> No school, or individual owner, has *any* legal *right* to participate in the Title IV programs. Each Title IV application represents a request for participation that the Department must evaluate based upon its individual merits. The regulations make it clear that the Secretary *may* approve an application to participate based on a change in ownership. *See* 34 C.F.R. § 668.13(c)(1)(ii). The fact that your conduct resulted in your agreed upon exclusion from participation in the Title IV programs for a period of three years, and that this period is now over, does not mean that, by default, you are now entitled to regain access to Title IV funds. Rather, the end of your

18

exclusion removed the five percent limit on
the amount of a participating institution you
may own, but did not restrain the
Department's authority, and discretion, to
review any ownership change in which you are
involved, and determine whether it should be
approved.  The existence of the prior
settlement agreement in no way alters the
Department's obligation to evaluate your
integrity and determine whether you are
someone to whom access to federal funds
should be provided.  The Department alone has
the responsibility to protect students and
taxpayers by allowing only those to
participate whose ability to act [] as a
fiduciary is unimpeachable.

A person is excluded for a finite period, and
with that flows specific consequences.  But
the end of the period of exclusion does not
automatically remove the underlying *cause* of
the exclusion, and if that cause casts doubt
on that person's ability to act as a
fiduciary of federal funds, the Department
would be derelict in its duty to protect the
public fisc if it allowed the individual to
again receive Title IV funds simply because
that person is no longer excluded.  The mere
passage of time does not resolve the matter.

SER at 200, 201-202.  This remains an accurate statement.

Although Mr. Mirzaei is not prohibited from acquiring schools and

applying to the Department for Title IV eligibility as an owner,

neither is the Department restricted in the conclusions it draws

regarding Mr. Mirzaei's character when rendering decisions on

those applications, as long as Mr. Mirzaei is given the

opportunity to defend himself, explain his past behavior, or

otherwise demonstrate that a conclusion of untrustworthiness is

incorrect.

The agreement settling Mr. Mirzaei's proposed debarment expressly notes that its "purpose" is to "settl[e] the proposed debarment of Allen Mirzaei" and certain liabilities owed to the Department by the institution that Mr. Mirzaei owned.  SER at 211.  The agreement contains no language whatsoever that restricts the Department's ability to evaluate what the underlying misconduct means as to Mr. Mirzaei's character for truthfulness should another institution apply for Title IV eligibility with Mr. Mirzaei as 100% owner.  Accordingly, the Department was not limited in this regard.  As the District Court concluded, "The Settlement Agreement neither directly addressed nor prohibited the [Department] from considering Mirzaei's prior conduct in future applications for Title IV federal funding." SER at 001, 012.

In *New York Institute of Dietetics, Inc. v. Riley*, 966 F.Supp. 1300 (S.D.N.Y. 1997), certain school owners challenged the Department's decision to deny an institution full certification because the owners owed a liability to the Department from a prior school ownership.  The school owners alleged that settlement agreements that resolved debarment actions that were initiated against them with voluntary exclusions were intended to "achieve a state whereby [plaintiff] was to be judged on its own merit and not to be punished for the … previous relationship."  *Id*. at 1308.  The Court evaluated the

settlement agreements and identified language stating that the
agreements' "sole purpose" was to resolve debarment actions, and
that the Department expressly reversed the right to pursue any
other actions authorized by law. *Id.* at 1309. The Court found
that the Department's actions in denying the institution Title IV
eligibility were not arbitrary and capricious, and gave deference
to the Department's interpretation that the settlement agreements
did not foreclose this subsequent action. *Id*. at 1312. As a
result, the school lost eligibility to participate in the Title
IV programs.

The settlement agreement with Mr. Mirzaei is silent
regarding the future use the Department may make of Mr. Mirzaei's
underlying conduct should another institution apply for Title IV
eligibility with Mr. Mirzaei as owner. However, such silence by
no means precludes the Department from evaluating what the prior
conduct means in regards to the Department's ability to trust Mr.
Mirzaei to act as its fiduciary. As the exclusive "purpose" of
the agreement was to settle the debarment and ancillary
liabilities, no inference can be drawn that the Department
thereby waived its right to exercise its discretion and evaluate
what the underlying conduct meant concerning Mr. Mirzaei's
character for trustworthiness. Thus, the settlement agreement is
no impediment to the Department's actions here. Accordingly,

21

this Court should affirm the district court's decision under the Administrative Procedure Act.

## III. **The Department's Denial Of HBC's Title IV Reapplication Was Not Arbitrary Or Capricious**

The Department's consideration and denial of HBC's Title IV reapplication with Mr. Mirzaei as 100% owner was a reasonable exercise of its discretion to determine whom to trust as a fiduciary to administer Title IV funds for students. The Department acted consistent with a well-established statutory framework, and its implementing regulations, as well as the Department's standard practices and procedures, governing the review of eligibility applications submitted by prospective Title IV institutions.

Pursuant to the 1992 Amendments to the HEA, Congress established the standard for evaluating the status of institutions that undergo a change of ownership resulting in a change of control. In particular, Section 498(i) of the HEA was amended to declare,

> An eligible institution of higher education that has had a change in ownership resulting in a change in control shall not qualify to participate in [Title IV] programs … after the change in control … unless it establishes that it meets the requirements of … this section after such change in control.

20 U.S.C. § 1099c(i)(1).

22

It is important to note that an overarching purpose of the HEA Amendments of 1992 was to "enhance the integrity of the student financial aid programs."  H. Rept. No. 102-447, 102d Cong., 2d Sess., at 10 (Feb. 27, 1992), *reprinted in* 1992 U.S.C.C.A.N 334, 335.  The 1992 HEA Amendments further stressed the Secretary's responsibility as "gatekeeper". The Senate summarized this goal by stating:

> Restoring public confidence in student financial aid programs is one of the most serious challenges we face in this reauthorization. The integrity of Title IV programs has been harmed immeasurably by persistent reports of fraud and abusive actions by schools and other program participants, especially in the Stafford loan program where profit incentives are great.

S. Rep. 102-204, at 3 (Nov. 12, 1991).  In addition, the Senate stressed that the Department should "undertake strong enforcement of the law and make full use of the authorities provided under it." *Id*. at 46.

The Congressional change regarding Title IV applications to reestablish Title IV eligibility following a change of ownership and control led the Department to adopt implementing regulations at 34 C.F.R. § 600.31.  In particular, with this legislative development, the former institution loses all rights to continue Title IV participation under its previously existing PPA.  It must reapply under its new ownership and receive a new approval to resume Title IV participation requiring the Department to

23

reestablish eligibility for that institution, rather than merely continuing its pre-existing eligibility.

In adopting the previously referenced regulations at 34 C.F.R. § 600.31, the Secretary of Education explained as follows:

> Section 498(i) of the HEA requires an eligible institution that undergoes a change in ownership that results in a change of control to be treated, for purposes of establishing its eligibility, as if it were a new institution. A new institution, of course, is not an eligible institution until it demonstrates to the Secretary that it satisfies eligibility requirements and has the requisite administrative and financial capability to merit certification to participate in the Title IV, HEA programs. Thus, two consequences of the statutory change are that (1) an eligible institution loses its eligibility and its participation in any HEA program on the date that the institution undergoes the change of ownership that results in a change in control, and (2) the provisions of current 600.31(a) allowing the institution to be treated as the same institution, provided that the new owner satisfies the conditions contained therein, are superceded by the requirements that an institution may not participate in a Title IV, HEA program after it undergoes a change in ownership and control until it reestablishes its eligibility.

59 Fed. Reg. 6453 (Feb. 10, 1994).

In order to participate in the Title IV programs, an institution must execute a PPA with the Department, which governs the institution's Title IV eligibility. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.13. The Department agrees to accept an institution's application for a PPA only after performing a thorough review of the institution's administrative capability and financial responsibility, determining that the institution satisfies statutory eligibility requirements, evaluating whether

24

the institution is capable of acting as the Department's
fiduciary, and deciding whether the institution "otherwise
appear[s] to lack the ability to administer the Title IV, HEA
programs competently."  34 C.F.R. §§ 600.20(a); 668.15, 668.16,
668.82(a), (b), 668.16(n).

Pursuant to its review of HBC's Title IV reapplication, the
Department considered the fact that Mr. Mirzaei, the owner of
HBC, had previously provided forged financial statements to the
Department when he was the owner of another Title IV institution,
and concluded that HBC, under his sole control, could not be
trusted to act either competently, or as its fiduciary.  SER at
182-183.

The Department did not determine that Mr. Mirzaei personally
forged the signatures.  Nor, for purposes of its decision to deny
HBC's Title IV reapplication did the Department claim to know.
Perhaps, Mr. Mirzaei is wholly innocent of any *personal*
wrongdoing here as he may choose to proclaim.  Perhaps he really
thought that someone who did not do so had audited his company's
books.  Perhaps he initially provided the financial statements to
the Department without looking at them, and assumed they were
complete.  Perhaps he delegated to someone else the task of
securing the auditor's signature, and never questioned the
process regarding how the "signed" statements were obtained
before his school resubmitted them.  However, CBC, as Mr.

25

Mirzaei's school, did submit the statements with the forged signatures to the Department while operating in the capacity of the Department's fiduciary. And HBC, as Mr. Mirzaei's school, was seeking to become the Department's fiduciary when it applied for Title IV eligibility. Given the past performance of CBC, the Department declined to forge such a fiduciary relationship with HBC.

As previously addressed, the Administrative Procedure Act establishes the standard of review that the Court must apply in this case. "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law …" 5 U.S.C. § 706(2)(A). The District Court acknowledged this particular standard of review in this case by stating, "The Court reviews the [Department's] decision for an abuse of discretion." SER at 019, 040.

When the Department makes a determination regarding an eligibility application, it constitutes an informal adjudication, and courts have properly given such decisions deference. *See New Concept Beauty Academy, Inc. v. United States Dep't of Educ.*, 1998 U.S. Dist. LEXIS 17373, at *6 (E.D.Pa. Oct. 29, 1998) ("In reviewing the Department [of Education's] actions, [the Court] shall apply the deferential standard of review outlined in the Administrative Procedure Act … and will overturn the Department's

26

decision only if … it was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.'") (Citations omitted.)  The District Court formally acknowledged that such deference applies in this case when it stated, "The [Department's] decision on whether to enter into a participation agreement with a particular entity is entitled to deference." SER at 019, 040.

Such deference was given to the Department's denial of an application that an institution submitted to expand its operations with an additional location in *Instituto de Educacion Universal Corp. v. Riley*, 973 F.Supp. 95 (D. Puerto Rico 1997). The Court applied the "deferential standard of review outlined in the Administrative Procedure Act," id. at 97, and held that:

> It is within the Department's discretion to determine the method of providing funds to eligible institutions. …Similarly, the Department determines whether or not an institution of higher education is administratively capable and financially responsible enough for its branch campuses to qualify for participation in [the] Title IV programs.

*Id.*  In that case, the court concluded that plaintiff "failed … to present evidence to rebut the Department's reasons for its actions and show that the Department abused its discretion."  *Id.*

In this case, HBC's application was to reestablish Title IV eligibility for the institution's main campus, rather than to add a branch campus.  The application was disapproved based upon the

27

prior fraud committed by another institution that Mr. Mirzaei owned. HBC chose not to "rebut the Department's reasons for its action" by challenging the factual basis for the disapproval, and requested reconsideration of the decision. *See* SER at 184-199. The Department denied that request, and this denial manifested no abuse of discretion in the process.

Plaintiff's only specific objection to the denial-- that the Department's decision somehow conflicted with an earlier acknowledgment that Mr. Mirzaei had become the 49% owner of HBC-- is addressed in the next section.

**IV. The Department's Denial Of HBC's Title IV Reapplication With Mr. Mirzaei As 100% Owner Was Not Arbitrary And Capricious Following The Department's Acknowledgement Of HBC's Report That Mr. Mirzaei Had Become A 49% Owner**

The Department received notice from HBC on March 7, 2006 that Mr. Mirzaei had become its 49% owner. SER at 045, 050-051. At that time, majority (51%) control was still held by the same individual who had assumed ownership in 2004. *Id*. Since Mr. Mirzaei was a minority owner, there was not a change in ownership that resulted in a change in control at the institution, and no Department approval was required for this transaction, a fact Appellants acknowledge in their brief. Appellants' Opening Brief at 35. As such, the institution simply provided this information to the Department because all institutions face reporting requirements so that the Department may retain current

28

institutional data.  *See* 34 C.F.R. § 600.21(a)(6).  In the normal course, the Department acknowledged receipt of this information on June 7, 2006 by updating HBC's ECAR.  SER at 074.

Less than two months later, on August 1, 2006, when Mr. Mirzaei secured the remaining 51% ownership interest in HBC, he became its 100% owner.  See SER at 085, 099.  This constituted a change in ownership that resulted in a change in control, and as a result, HBC's PPA expired, and HBC had to apply for Title IV eligibility under its new ownership structure.  20 U.S.C. § 1099c(i)(1).

Appellants claim that the Department's action denying HBC's Title IV reapplication was arbitrary and capricious because the denial did not "provide a sufficient explanation for the reversal" of the Department's position regarding Mr. "Mirzaei's fitness to 'exercise substantial control' over HBC, whether at the 49% level or the 100% level."  Appellants' Opening Brief at 36-37.  This claim, however, is wholly specious.  The Department did not reverse any position it had taken.  HBC earlier reported to the Department that Mr. Mirzaei was a 49% owner, and the Department acknowledged that fact.  As a matter of law, Mr. Mirzaei's assumption of this level of ownership had no effect on HBC's Title IV eligibility.  Subsequently, Mr. Mirzaei secured the remaining 51% of HBC's ownership, an act that, as a matter of law, resulted in HBC's loss of its Title IV eligibility.  See 20

29

U.S.C. § 1099c(1).  At that time, HBC reapplied for Title IV
eligibility, and the Department denied that application.  The
Department provided the reasons for its denial, and gave HBC an
opportunity to respond.  There was no "reversal" for the
Department to "explain" pursuant to this denial.

It has never been a question of the Department "allowing"
Mr. Mirzaei to own 49% of HBC and "disallowing" him from owning
100%; institutions are permitted to shuffle their ownership
structure without the Department's approval as long as the
changes in ownership do not trigger a resulting change in the
control of the institution, since it is the change of ownership
and control that causes an institution's PPA to expire.  Mr.
Mirzaei's purchase of 49% of HBC did not trigger a change in
control since the other owner retained a 51% ownership interest.
However, as soon as Mr. Mirzaei took ownership of 100% of the
institution, HBC's PPA expired.  The Department then had to make
a decision, and it rationally decided to disapprove HBC's Title
IV eligibility with Mr. Mirzaei as 100% owner given the past
misconduct attributed to another institution he owned.
Accordingly, there is no basis to claim that Appellee's behavior
was arbitrary and capricious in this regard.[3]

---

[3]As previously mentioned, the Department has developed
procedures to provide prospective owners with guidance concerning
any impediments an institution may face in obtaining Title IV
eligibility following a change of ownership resulting in a change
in control.  SER at 064, 070.  This process allows a serious

30

**V.**   **The Department Provided HBC With All The Process HBC Was Due Pursuant To The Denial Of HBC's Title IV Eligibility Reapplication**

A property or liberty interest deserving of constitutional protection pursuant to the Fifth Amendment is a prerequisite for a Fifth Amendment claim.  *See Gilbert v. Homar*, 520 U.S. 924 (1997).  In order to possess a property interest in a benefit, an individual must have more than "an abstract need or desire for it" or "a unilateral expectation of it."  Rather, one must possess "a legitimate claim of entitlement to it."  *Bd of Regents v. Roth*, 408 U.S. 564 (1972).

No institution, much less an institution with a particular ownership structure, has a *right* to participate in the Title IV, HEA programs.  Rather, the Department evaluates each individual

---

businessperson to properly evaluate the risks inherent in the purchase of a Title IV school and otherwise serves to facilitate a smooth transition from one ownership team to the next.  Not surprisingly, virtually every potential Title IV applicant for a change of ownership resulting in a change in control in 2006 sought the Department's guidance through the preacquisition review process.  SER at 064, 070-071, Moreover, of the approximately 50 institutions since June 2004 that abandoned a Title IV application for a change of ownership resulting in a change of control, most did so after being alerted to the potential deficiencies in the application during the preacquisition review process.  SER at 064, 070.  HBC thus stands virtually alone as an institution that decided to forsake this valuable opportunity to have its application appraised by the Department.  SER at 064, 071.  It is difficult to fathom a system that is designated to more thoroughly protect investment decisions and to avoid the kind of arbitrary determination that Appellants wrongfully claimed occurred here.

31

application to determine the propriety of establishing a
relationship with an entity that will act as its fiduciary.
As the Fifth Circuit Court of Appeals has stated, "[w]e have
consistently held that the mere existence of a governmental
program or authority empowered to grant a particular type of
benefit to one such as the plaintiff does not give the plaintiff
a property right, protected by the due process clause, to receive
the benefit, absent some legitimate claim of *entitlement*--
arising from statute, regulation, contract, or the like-- to the
benefit.  This is [also] true for the continuation of a benefit."
*Blackburn v. City of Marshall*, 42 F.3d 925, 941 (5th Cir.
1995)(*emphasis* in original).

        In the case of Title IV participation, there exists no such
entitlement.  Institutions file applications to participate in
the Title IV programs that are reviewed, and evaluated, by the
Department, conditioned upon an institution's satisfaction of
certain statutory and regulatory requirements, and the
institution's ability to act as the Department's fiduciary.  As
the Second Circuit Court of Appeals has stated, "[i]n assessing
whether a plaintiff has a clear entitlement, we focus primarily
on the degree of discretion enjoyed by the issuing authority, not
the estimated possibility that the authority will act favorably
in a particular case." *Village Pond Inc. v. Town of Darien*, 56
F.3d 375, 378 (2d  Cir. 1995), cert. denied, 519 U.S. 808 (1996).

32

*See also, Love v. Pepersack*, 47 F.3d 120, 128 (4th Cir. 1995) ("Laws calling for issuance of a license or permit cannot create property rights unless the [state actor] lacks all discretion.") (*emphasis* in original).

Institutions file initial applications for Title IV participation and some are denied, some are approved, and some are provisionally approved. As the Court stated in *Career College Ass'n v. Riley*, 74 F. 3d 1265, 1274 (D.C. Cir., 1996), "Such [initial] applicants are not "participating" in a Title IV program and do not possess any current "eligibility" that can be lost. To conclude otherwise would create in effect an "entitlement" to certification-- for without positing such an entitlement, which the statute does not provide, there is no valid argument that an *applicant* has a "right" to procedural protections granted participating institutions." (*Emphasis in original.) See also, Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775, 778 (10th Cir. 1998) ("[Title IV] [e]ligibility is not [an] entitlement"). In fact, by providing that upon a change of ownership, Title IV eligibility ceases unless and until a previously eligible institution establishes anew that it meets certain requirements, the HEA refutes any claim that an institution, much less an individual, has a "right" or "entitlement" to Title IV participation. 20 U.S.C. § 1099(c)(i). Accordingly, Appellants cannot make out a due process claim.

33

Even assuming Appellants had a Fifth Amendment right to due process with respect to HBC's Title IV reapplication, the district court properly found that the Department's procedures afforded all the protections required.  The District Court noted that a liberty interest may be protected if an adverse determination is "preceded by written notice of the facts upon which the charge is based and a reasonable opportunity to submit facts in response" (quoting Related Indus., Inc. v. United States, 2 Cl. Ct. 517, 526 (Cl. Ct. 1983).  SER at 0019, 0036. Here, the Department articulated the basis for its decision, and, as the District Court found, "[Appellants] had an opportunity to contest the factual basis of the [Department's] October 10, 2006 rejection letter."  SER at 001, 013.  Thus, even assuming the existence of a liberty interest, adequate process was provided.

In *Old Dominion Dairy Products, Inc. v. Sec'y of Defense*, 631 F.2d 953 (D.C. Cir. 1980), the Court reviewed the government's rejection of a bid by a company to supply certain dairy products based upon a conclusion that the bidder "lacked integrity."  *Id*. at 955.  Plaintiff in that case did not claim any property right to a government contract, but rather argued that it had a liberty interest that was affected by the presumed stigmatizing of its ability to do business.  *Id*. at 961.  The Court affirmed the existence of such a liberty interest, and then found that Plaintiff was entitled to notice of the charges

34

against it and an opportunity to respond. *Id*. at 968. The Court expressly rejected that there was a need to provide plaintiff with "any type of a formal hearing." *Id*.

Appellants in this case received precisely the notice and opportunity to respond that the Court in *Old Dominion Dairy* found constitutionally required. Nonetheless, Appellants here, despite receiving such notice, declined to join issue with the basis for the action denying Title IV eligibility to HBC, or to provide any type of exculpatory or explanatory evidence. The Department reviewed Appellants' response, and provided an explication of why it was unpersuasive. SER at 200-202.

Appellants' application was disapproved based upon the prior fraud committed by another institution that Mr. Mirzaei owned. In particular, the Department advised HBC that its Title IV application was being denied because "[o]n three separate occasions, [Mr. Mirzaei] submitted financial statements on behalf of CBC … that were represented as having been prepared by an independent accountant, Mr. Erik Jardstrom. Mr. Jardstrom examined the statements [Mr. Mirzaei] submitted and prepared an affidavit to the Department deeming the submission a forgery." SER at 182. As previously stated, the Department then advised HBC that it could submit "evidence to dispute the Department's findings, and demonstrate their inaccuracy." SER at 182, 183. And, yet, HBC did not do so. Nor did HBC claim that it lacked

35

notice as to the nature of the conduct upon which the denial was based. In fact, HBC knew full well what triggered the denial. HBC also had the opportunity to offer whatever explanations or denials it desired, and the Department reevaluated HBC's status based upon the response it received. As such, HBC received notice, an opportunity to be heard, and an evaluation of its response. As a result, Appellants received the appropriate process when the Department denied HBC's Title IV reapplication, and any claims that Appellants now make regarding a constitutionally unprotected liberty interest should be found wanting.

Appellants claim that the above arguments "cannot mean that the government can act arbitrarily, either substantively or procedurally, against a person." *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964). Appellants' Opening Brief at 38-39. Appellants further claim that they have been deprived of "liberty interests," asserting that Mr. Mirzaei "has lost the ability to earn a livelihood through investing in and operating institutions participating in the Title IV programs," and that "[c]learly, the [Department] has unlawfully blacklisted Mirzaei and severely damaged his reputation." *Id*. at 38, 40. However, to the contrary, what is "clear" is that the Department has done no such thing. There is no proscription on the ability of any institution to seek Title IV eligibility with Mr. Mirzaei as an

36

owner and investor. There is no "blacklist" with Mr. Mirzaei's name on it. Rather, the Department denied one application submitted by HBC with Mr. Mirzaei as 100% owner, and gave HBC the opportunity to explain Mr. Mirzaei's conduct. When HBC did not do so, the denial of its application was reaffirmed. That is all that has happened in this case.

Appellee concedes that a party has a liberty interest in avoiding debarment. However, for such a conclusion to affect the outcome here, there would first need to be a factual finding that Appellants have, in fact, been debarred. And there is no basis to make such a finding in this case. This issue is addressed in the next section.

## VI. **The Department's Denial Of HBC's Title IV Reapplication Did Not Constitute A De Facto Debarment Of Allen Mirzaei**

Appellants allege that by denying HBC's Title IV reapplication, the Department has de facto debarred Allen Mirzaei. In fact, the Department has done no such thing. The concept of "de facto debarments" arises within the context of procurement law. The principles adjudicated are those connected with rights held by companies participating in a competitive bidding system to obtain federal contracts under the Federal Acquisition Regulation when a low bidder is denied a government contract. Such a legal framework is inapplicable to the Department's evaluation of an application from a school owner to

37

act as its fiduciary.  The circumstances could not be more
dissimilar.  Contractors are not fiduciaries of federal funds,
but instead are entities competing with other contractors to do
business with the government.  School owners, by comparison, are
evaluated non-competitively to determine whether they can be
trusted to properly administer federal funds.

When the Department evaluates a Title IV application, it is
not awarding a contract to an individual company under federal
procurement law, for the company's benefit, following the receipt
of multiple competing bids.  Rather, the Department is securing a
fiduciary relationship with an entity for the benefit of the
institution's students. Students, not institutions, much less
institutions with a particular ownership structure, are the
intended beneficiaries of the Title IV programs.  *Parks School of
Business, Inc. v. Symington*, 51 F. 3d 1480, 1484 (9th Cir. 1995)
("Clearly, the HEA was enacted to benefit students. … [S]chools
are not among the class for whose especial benefit the statute
was enacted") (*emphasis* in original).

In this case, there was no competition regarding HBC's
application; the Department had to decide whether to enter into a
fiduciary relationship with HBC given its current ownership
structure.  When the Department chose not to engage in such a
relationship, it was not because the Department preferred some
other party to HBC.  The Department simply decided that it did

38

not believe that HBC was demonstrably worthy to serve as its fiduciary, and that the interests of students and taxpayers were at risk if that institution was entrusted with federal dollars.

Within the procurement context, when a contractor is the lowest bidder, it has a presumptive *right* to receive that contract, absent a showing of nonresponsibility.  Here, the institution has no *right* to have its application approved.  In all cases, the Department properly, and appropriately, evaluates the totality of an institution's circumstances, to include, among other things, as previously stated, whether it "otherwise appear[s] to lack the ability to administer the Title IV, HEA programs competently."  34 C.F.R. § 668.16(n).  An institution applies for Title IV eligibility either as an initial applicant, or to reestablish eligibility as if it were a new school, and the Department acts upon that application.  Congress has bestowed upon the Department the authority to make an appropriate decision by appraising an institution's financial wherewithal and administrative capability.  Unless the Department abuses its discretion in that determination-- presumably by offering no rationale for its decision, or by positing one that has no rational relationship to whether the entity has manifested sufficient trustworthiness to serve as its fiduciary-- its determination should be upheld.

39

In this case, the Department determined that HBC's application to reestablish eligibility should be rejected because the Department found that HBC's 100% owner had submitted forged financial statements when he was a prior 100% owner of a Title IV eligible institution. SER at 182-183. Such a determination is rationally related to a proper Department objective-- assuring that an institution is sufficiently trustworthy to protect both itself and the institution's students from abuse if the Department provided the institution with federal monies. Further, in the letter notifying HBC of its determination, the Department offered HBC and Mr. Mirzaei the opportunity to address the factual issues that formed the basis for the Department's decision. *Id.* They chose not to do so. Specifically, as the District Court found, Appellants "had an opportunity to contest the factual basis of the [Department's] October 10, 2006, rejection letter pursuant to 34 C.F.R. § 600.41(c)(1). The record does not reflect any additional evidence presented by [Appellants] to the [Department] refuting Mr. Mirzaei's involvement with the forged documents submitted on behalf of CBC in 1995." SER at 001, 013.

While the District Court found that the concept of de facto debarments could be applied outside of the procurement context,

40

Appellee believes that conclusion is erroneous.[4]  In its
Preliminary Injunction Order, the District Court discussed the
case of *Gonzalez v. Freeman*, 334 F.2d 570 (D.C. Cir. 1964), and
correctly noted that it is *not* a de facto debarment case, but
stands for the proposition that agencies must promulgate and
follow debarment regulations when debarring an individual.  SER
at 019, 035.  The District Court then stated, "Since the
[Department] is legally required to promulgate debarment
regulations, it makes little sense that it would be immune from
the concept of de facto debarments." SER at 019, 035.  The
District Court concluded, "The [Department] has not offered an
explanation, and the Court cannot conceive of one, as to why the
failure to follow debarment regulations could not result in a de
facto debarment in the Title IV context."  SER at 019, 036.

     Separately, the Department does not dispute that it is
required to adopt and implement debarment regulations, and, in
fact, it has done so. *See* 34 C.F.R. Part 85; *see generally* SER
at 019, 025-026.  When the Department seeks to debar someone, it
follows those regulations.  In addition, the Department
acknowledges that if it had taken steps that barred an individual
from participating in Federal programs without following its

---

     [4]  Defendant-Appellee need not file a cross-appeal to bring
this argument before this Court, because Appellee may urge
affirmance on any ground appearing in the record.  Rivero v. City
and County of San Francisco, 316 F.3d 857, 861-62 (9th Cir.
2002).

41

debarment regulations, such an action *could* constitute a de facto debarment.  However, in this instance, the Department did not do so.  As a result, the Department's debarment regulations are not germane to an evaluation of its actions in this case.  Instead, the Department properly utilized its discretion to evaluate, and subsequently deny, an eligibility application to obtain access to Title IV funds from an institution with a certain ownership structure.  Neither that institution, nor any of its principals, has been debarred, either from all Department programs, or from contracts with other government agencies.  As the District Court found, Appellants "have not been prohibited from applying to and participating in any [Department] program, or from obtaining federal funds from other government agencies.  (Citation omitted.)  Their names are not included on the Government's Excluded Parties List, and they are not limited in their abilities to contract with the United States Government.  (Citations omitted.)"  SER at 001, 017.

Appellants assert that the District Court's reasoning here is flawed; a de facto debarment need not have the same affect as a de jure debarment. Appellants' Opening Brief at 31.  The better argument, however, is that the concept of de facto debarment, as it has been developed and applied within the procurement context, simply does not translate logically to circumstances where the Department is acting pursuant to its statutory authority to make

42

a single determination regarding an entity's capacity to serve as its fiduciary. In that regard, the Department may decide that an institution may qualify for Title IV eligibility based upon one particular ownership structure, and not another, and the denial of one such application does not necessarily mean that another will not succeed. As the District Court further stated, it "recognizes that, in the Title IV context, the [Department] has legitimate concerns that may not be present for agencies considering procurement contracts." SER at 019, 036, 037.

Accordingly, Appellee asserts that the charge of a de facto debarment remains inapplicable to a determination of whether particular applicants meet the fiduciary standards that are required for institutional eligibility to participate in the Title IV programs.

However, even if the concept of de facto debarments is extended to the circumstances that exist in this case, the District Court rightfully found that Appellants have "a 'high standard' to meet when trying to establish a de facto debarment claim." SER at 001, 015. *TLT Const. Corp. v. United States*, 50 Fed. Cl. 212, 215 (Fed. Cl. 2001). The Court further found that, "[a] one time determination does not constitute a de facto debarment." SER at 001, 015. *See, e.g.*, *Commercial Envelope Mfg. Co., Inc. v. Dunlop*, 1975 U.S. Dist. LEXIS 11695, at *9 (S.D.N.Y. June 26, 1975) ("…a single determination of

43

nonresponsibility does not result in a de facto debarment because its effect does not extend beyond the contract with respect to which the nonresponsibility was found"); *Abyss Oil Company, Inc. v. United States*, 1993 U.S. Dist. LEXIS 15499, at *17 (D.D.C. Oct. 29, 1993) ("[a] one-time disqualification based on a reasonable determination of nonresponsibility does not, absent additional proof, constitute a de facto debarment"); *Community Economic Development Corp., Inc. v. United States*, 577 F.Supp. 425, 428 (D.D.C. 1983)("[a] reasonable determination of nonresponsibility combined with some remarks made in what was most likely a heated context do not constitute de facto debarment").

Here, HBC submitted an application with Mr. Mirzaei as 100% owner. This represented the first time that the Department evaluated a Title IV application from HBC where Mr. Mirzaei was the controlling owner. *See* SER 065, 071-072. The Department rejected the application because of Mr. Mirzaei's past misconduct, and the absence of any evidence establishing that Mr. Mirzaei's character for truthfulness had changed since the Department's last dealings with him. SER at 064, 072. Previously, Mr. Mirzaei served as 49% owner of HBC, and the Department did not move to revoke HBC's PPA, establishing that Mr. Mirzaei had not been barred from some level of Title IV participation.

44

Accordingly, Mr. Mirzaei has not been debarred, de facto or otherwise.  The District Court concurred with this conclusion when it stated that, "[t]he Department['s]… denial of one application by [HBC] for Title IV federal funds does not constitute a 'systematic pattern of debarment.'"  SER at 001, 016.

Appellants allege that since the Department denied HBC's application with Mr. Mirzaei as 100% owner because it determined that it could not trust Mr. Mirzaei to serve as its fiduciary, and since all schools must serve as the Department's fiduciary, no school's Title IV application will ever be approved with Mr. Mirzaei as 100% owner, demonstrating that the denial "was not a single, isolated agency action."  Appellants' Opening Brief at 30.  This claim, however, is based on sheer conjecture excluding the potential for intervening events to change the Department's subsequent determinations.  Moreover, as found by the District Court, the administrative record effectively belies such a claim.  As the District Court found, "[t]he deposition testimony of Douglas Laine, an employee of the … [Department], clearly states that the [Department] will 'consider any application submitted by a school that included Mr. Mirzaei for participation in [the] Title IV programs.'"  SER at 001, 016, and 228, 245.  Likewise, pursuant to her deposition, Linda Henderson, another Department employee, explained that the Department would evaluate any

45

application it receives in the future from an institution with Appellants possessing an ownership interest and independently determine whether the school satisfies the requisite standards of administrative capability and financial responsibility. *See* SER at 246, 247-248, 251-252. Appellants cannot cite to anything within either deposition to suggest anything to the contrary.

Unless and until another institution with Mr. Mirzaei as majority owner submits a materially complete application for Title IV participation, it cannot be said what the Department's response in that situation will be. As previously discussed, the circumstances that arose regarding HBC represent the first time that an institution applied for Title IV eligibility with Mr. Mirzaei as its 100% owner since Mr. Mirzaei's prior ownership of another institution came to an end in 1997. In a proper exercise of its discretion, the Department rejected HBC's application, and gave the institution an opportunity to rebut the factual basis for the Department's determination. HBC did not do so, nor did it provide any explanation for the abusive conduct, or any indication of remorse from the owner, or any evidence of the owner's reformed character. The Department was asked to rely solely on the passage of time as a reason to allow an institution to receive Title IV eligibility with Mr. Mirzaei as sole owner. The Department chose not to do so, and HBC effectively presented no reason for the Department to reconsider its denial.

Nothing in the Department's decision, and the accompanying record, states that the Department has foreclosed consideration of a Title IV application from any other-- much less *every* other-- institution based on the level of Mr. Mirzaei's involvement as an owner.  Should another institution submit a Title IV eligibility application with Mr. Mirzaei as an owner, perhaps that institution will provide additional positive information about Mr. Mirzaei that HBC did not submit, and that may convince the Department to act otherwise.  In the alternative, should the Department deny an institution's application to participate with Mr. Mirzaei as an owner even when given additional facts, Mr. Mirzaei's claim of a de facto debarment could at least become colorable.  However, at a minimum, until such contingencies arise, there is no basis to conclude that the Department constructively debarred Mr. Mirzaei here.

In this case, the Department acted to deny Title IV eligibility to an institution whose new 100% owner previously provided the Department with falsified financial documents. The Department's decision was rationally related to the need to protect students and taxpayers from possible abuse by an individual who it found to be untrustworthy.  It has not debarred Mr. Mirzaei, and it has rendered no determinations regarding his

47

sons.[5]  Accordingly, the Department did nothing more than
properly exercise its discretion to evaluate the propriety of
permitting an institution to participate in the Title IV
programs.

Similarly, within the context of the HEA, and its
implementing regulations, there is no reason for the Department
to debar someone prior to denying an application that an
institution may submit with that person as owner.  No institution
without a PPA then in effect, much less an institution with a
particular person as owner, has a right to participate in the
Title IV programs.  The Department evaluates each Title IV
application it receives on a case by case basis, and exercises
its discretion to determine the propriety of permitting that
institution to serve as its fiduciary.  It may deny an individual
institution's application because the conduct of an owner leads

---

[5] Although Appellants do not make any express claims
regarding the Department's actions and Mr. Mirzaei's sons within
their opening brief, neither do Appellants formally withdraw any
claims related to them.  However, the District Court found that
Mr. Mirzaei's sons were not de facto debarred as a result of an
email communication from a member of the Department's Office of
General Counsel in response to a plea from HBC's former counsel
to resolve the Department's denial of HBC's reinstatement
application in a manner that would restore HBC's Title IV funding
on an interim basis.  The District Court concluded, "the October
25, 2006 email is clearly nothing more than a prediction of what
the [Department] *may* do if presented with a new application for
HBC and does not come close to a final determination by the
[Department].  At this juncture, any claim by Mr. Mirzaei's two
sons is premature and will not be considered by the Court."  SER
at 019, 034.  (*Emphasis* in original).

48

it to conclude that the institution with that person as owner
should not serve as its fiduciary.  The limited question is
whether the Department's actions in that regard were properly
identified in the decision letter, and whether the reasons stated
were arbitrary and capricious.

The Department may or may not choose to separately, or
contemporaneously, debar an individual who is an owner of an
institution whose Title IV application it denies.  The
Department's debarment regulations have specific consequences
that greatly exceed the reach of a Title IV application denial.
In particular, an individual who is debarred, cannot hold *any*
ownership interest in an institution, or provide any services
that constitute "covered transactions" to other Title IV
institutions.  *See*, e.g., 34 C.F.R. §§ 85.115, 85.200.  The
denial of an institution's Title IV application results solely in
foreclosing an institution's ability to participate in the Title
IV programs with a particular person owning a majority, or
controlling interest, in that institution.  Moreover, the
Department's debarments necessarily have a reciprocal
governmentwide effect, 34 C.F.R. §§ 85.115, 85.125, whereas the
denial of one school's Title IV application is limited to that
one school, and the particular Title IV programs.  It does not
reach to all other schools where the individual might hold some
ownership interest, or provide services, and has no effect on the

49

individual's ability to participate in other Department programs,
or other programs managed by other government agencies.
Accordingly, the Department makes separate choices regarding
whether to debar a Title IV applicant or merely deny the
applicant's particular Title IV application.

Appellants essentially proffer no evidence to support their
claim to a debarment despite being given the opportunity to
conduct "limited discovery " to "flesh out" the Department's
"representation" that "it would consider a new application … [by
Appellants]" and the absence of "evidence that the [Department]
has taken the position that under no circumstances will it allow
… [Appellants] to participate in [the] Title IV programs."  SER
at 253, 257-258 n.2.  The record reflects that not a scintilla of
evidence emerged to suggest that the Department has taken a
categorical position to bar Appellants from the Department's
programs even though Appellants conducted two depositions of
their own choosing, received responses to 13 interrogatories, and
obtained 1210 pages of document production beyond the certified
administrative record.

Nothing requires the Department to initiate a debarment
hearing to implement its particular regulatory scheme that
oversees the manner in which institutions obtain Title IV
eligibility.  Instead, Congress has given it a mandate to review
the credentials of institutions that seek access to Title IV

funds. That is all that the Department has done here. Accordingly, this Court should uphold the District Court's determination that the Department did not debar Appellants.

## VII. **Even Assuming Plaintiffs Somehow Prevailed On Liability, They Would Not Be Entitled To Anything Other Than A Debarment Proceeding**

In the final section of their opening brief, Appellants offer the fanciful argument that this Court should reinstate HBC's Title IV eligibility for the period from August 1, 2006 through July 3, 2007 to permit it to process Title IV funds for students who attended during that period. This request for relief should be rejected for two reasons. First, the relief is wholly outside the four corners of Appellants' Second Amended Complaint. Appellants at one time sought full reinstatement of HBC's Title IV eligibility, but that has since become a statutory impossibility given HBC's loss of accreditation. *See* 20 U.S.C. § 1002(b)(1)(D). However, at no time previously have Appellants sought reinstatement of HBC's Title IV eligibility for a discrete period. There is no basis to fashion a type of relief that was never before sought incident to this litigation. *Hormel v. Helvering*, 312 U.S. 552, 556 (1941) (holding that ordinarily an appellate court does not give consideration to issues not raised below). Second, the case law on de facto debarments establishes the relief, if any, that is to be awarded: the matter is to be returned to the agency for the provision of a debarment hearing.

51

*See, e.g., Related Industries, Inc. v. United States*, 2 Cl. Ct
517, 529 (Cl. Ct. 1983); *Leslie and Elliott Co., Inc. v. Garrett*,
732 F.Supp. 191, 198 (D.D.C. 1990).  Of course, such a remedy is
predicated upon an initial finding of the occurrence of a de
facto debarment which Appellee contests, but that remains the
most that Appellants could hope to secure here.

In addition, Appellants seek to enjoin the Department from
potentially enforcing closed school loan discharges against HBC.
Appellants' Brief at 43.  This remedy likewise is unavailable to
Appellants.  In particular, Congress assumes that schools are
liable to their students if they close and do not provide
training paid for by student borrowers.  The Department has been
directed to discharge the FFEL obligations of student borrowers
who were unable to complete their education due to school
closure.  20 U.S.C. § 1087(c)(1).  The statute mandates that upon
discharge, the Department "shall subsequently pursue any claim
available to such borrower against the institution and its
affiliates and principals…"  *Id*.  To potentially foreclose the
inevitable enforcement of this congressional prescription,
Appellants seek injunctive relief against the Department barring
the imposition of any liability to HBC for discharged loans.

This relief is also unavailable to Appellants.  First, once
again, the remedy now sought exceeds anything previously pursued
within the context of Appellants' litigation.  Second,

52

Appellants' request for injunctive relief against the Secretary is expressly barred by the HEA.  The statute unequivocally states that as to actions related to the FFEL program, "no … injunction, garnishment, or similar process, mesne or final, may be issued against the Secretary or property under the Secretary's control..."  20 U.S.C. § 1082(a)(2).  Numerous courts have found that § 1082(a)(2), and provisions like it, to mean what they say-- that the agency may not be enjoined as it relates to the program in question.  *See, e.g., J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990); *Thomas v. Bennett*, 856 F.2d 1165, 1168 (8th Cir. 1998); *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 832 F.Supp. 419, 434 n.31 (D.D.C. 1993).  There is no reason to deviate from that precedent here.

## CONCLUSION

This case is about nothing more than the authority of a federal government agency to review effectively the qualifications of entities that seek approval to be trusted with millions of dollars in federal monies by operating in the capacity of the agency's fiduciary.  The Department evaluates applications from educational institutions to determine whether they may begin participating, or reestablish participation, in the Title IV programs.  This case challenges the Department's authority to deny an application under the HEA, and its

53

implementing regulations, based upon the prior record of the institution's owner who submitted fraudulent financial statements while owning another school.  In this case, the Department's actions did not constitute an abuse of discretion, or otherwise impose a de facto debarment on Appellants.  Accordingly, Appellee requests that the decision of the District Court be affirmed.

DATED: Honolulu, Hawaii, May 20, 2009.

Respectfully submitted,
EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


        /s/ Thomas A. Helper
By_____
  THOMAS A. HELPER
  Assistant U.S. Attorney

Attorneys for Defendant-Appellee
MARGARET SPELLINGS, Secretary
United States Department of
Education, in her official capacity

54

<u>STATEMENT OF RELATED CASES</u>

Defendant-Appellee is not aware of any case pending in this Court that is related to this one within the meaning of Ninth Circuit Rule 28-2.6.

DATED: May 20, 2009, at Honolulu, Hawaii.

Respectfully Submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Thomas A. Helper

By: _____

THOMAS A. HELPER
Assistant U.S. Attorney

Attorneys for Defendant-Appellee
MARGARET SPELLINGS, Secretary
United States Department of
Education, in her official capacity

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Fed.R.App.P. 32(a)(7)(c) and Ninth Circuit Rule 32-1, Defendant-Appellee's Answering Brief is proportionally spaced, has a typeface of 12 points or more and contains 12,160 words.

Dated: May 20, 2009, Honolulu, Hawaii.


                          EDWARD H. KUBO, JR.
                          United States Attorney
                          District of Hawaii


                          /s/ Thomas A. Helper
                    By:  _____
                          THOMAS A. HELPER
                          Assistant U.S. Attorney

                          Attorneys for Defendant-Appellee
                          MARGARET SPELLINGS, Secretary
                          United States Department of
                          Education, in her official capacity

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2009, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First Class Mail, postage prepaid, to the following non-CM/ECF participants.

ROBERT DAVID BAKER
ROBERT DAVID BAKER, INC.
1611 The Alameda
San Jose, CA 95126

JULIE J. GIBSON
Brown and Dunn, P.C.
Suite 2300 Commerce
911 Main Street
Kansas City, MO 64106

ADORNO YOSS ALVARADO & SMITH
William Michael Hensley
Marc D. Alexander
1 McArthur Place, Suite 200
Santa Ana, CA 92707

EDWARD H. KUBO, JR.
United States Attorney
District Of Hawaii

/s/ Thomas A. Helper
By _____
THOMAS A. HELPER
Assistant U.S. Attorney
Attorneys for Defendant-Appellee